UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ONEIDA INDIAN NATION,

                    Plaintiff,

v.

MELVIN L. PHILLIPS, SR.
Individually and as Trustee;
MELVIN L. PHILLIPS,
SR./ORCHARD PARTY
TRUST,

                    Defendants,         5:17-CV-1035
                                               (GTS/ATB)

MELVIN L. PHILLIPS, SR.
Individually and as Trustee;
MELVIN L. PHILLIPS,
SR./ORCHARD PARTY
TRUST,

                      Counter-Claimant,

v.

ONEIDA INDIAN NATION,

                      Counter-Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

ONEIDA INDIAN NATION              MEGHAN MURPHY BEAKMAN, ESQ.
  Co-Counsel for Plaintiff/Counter-Defendant
5218 Patrick Road
Verona, New York 13478

ZUCKERMAN SPAEDER LLP           MICHAEL R. SMITH, ESQ.
  Co-Counsel for Plaintiff/Counter-Defendant
1800 M Street, N.W., Suite 1000
Washington, DC 20036-5802

ARNOLD & PORTER KAYE SCHOLER LLP   ERIC NEVINS WHITNEY, ESQ.
  Counsel for Defendant/Counter-Claimant    GLENN J. POGUST, ESQ.
250 West 55th Street
New York, New York 10019

GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

Currently before the Court, in this real property action filed by Oneida Indian Nation ("Plaintiff") against Melvin L. Phillips, Sr., individually and as Trustee ("Defendant Phillips"), and Melvin L. Phillips, Sr./Orchard Party Trust ("Defendant Trust") (collectively "Defendants"), is Plaintiff's motion to dismiss Defendants' counterclaim for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 24.) For the reasons set forth below, Plaintiff's motion is granted.

## I.  RELEVANT BACKGROUND

### A.  Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint claims that Plaintiff has a right to possess the 19.6 acres of land in dispute as part of the Oneida reservation ("19.6 acres in dispute"), which right arises from, and is protected against infringement by, federal treaty, statutory and common law, and the U.S. Constitution, and that Defendant Phillips' conduct in executing and recording the trust declaration, quit claim deed, and other documents in county land records was an unlawful attempt to obtain possession of and control over the 19.6 acres in dispute for his and his family's personal benefit. (*See generally* Dkt. No. 1 [Pl.'s Compl.].) As relief, Plaintiff's Complaint requests a declaratory judgment and a permanent injunction. (*Id.*) Familiarity with the factual allegations supporting this claim and the relief requested in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.

### B. Defendants' Counterclaim

Generally, liberally construed, Defendants counterclaims that Defendant Trust, as successor-in-interest to the historic Oneida Party, has a right to possess the 19.6 acres in dispute and other lands pursuant to the deed, which right arises from, and is protected against infringement by federal treaty, state treaty, statutory and common law, and the Constitution, and that Defendant Phillips' conduct in executing and recording the trust declaration, quit claim deed, and other documents in county land records was a lawful action to maintain possession and control over the 19.6 acres in dispute and other Orchard Party Oneida lands identified in the deed for the benefit of the Orchard Party Oneida. (*See generally* Dkt. No. 17 [Defs.' Answer and Countercl.].) Familiarity with the factual allegations supporting this counterclaim is assumed in this Decision and Order, which again, is intended primarily for the review of the parties.

### C. Parties' Briefing on Plaintiff's Motion

#### 1. Plaintiff's Memorandum of Law

Generally, in support of its motion to dismiss, Plaintiff asserts the following five arguments. (Dkt. No. 24, Attach. 2 [Pl.'s Mem. of Law].)

First, Plaintiff argues that the counterclaim does not state a claim under federal law because it fails to plausibly identify any source of federal protection of the rights of "Orchard Party Oneida" in the 19.6 acres in dispute. (*Id.*) More specifically, Plaintiff argues that, by expressly alleging that the Court possesses subject-jurisdiction over the counterclaim in the form of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 (Dkt. No. 17, at ¶ 54), Defendants choose not to allege that the Court possesses subject-matter jurisdiction in the form of federal-question jurisdiction pursuant to 28 U.S.C. § 1331 or what some federal courts have referred to

as "Indian tribes jurisdiction"[1] pursuant to 28 U.S.C. § 1362. (Dkt. No. 24, Attach. 2.)[2]
Furthermore, Plaintiff argues, there is no actionable state counterclaim over which the Court could possess supplemental jurisdiction, because state law plays no role in the protection of Indian land held by Indian title (which is the exclusive province of federal law). (*Id*.)

Second, Plaintiff argues that the counterclaim does not state a claim because, even if it were to identify a federal-law basis for its claim, it does not assert the rights of an Indian tribe a necessary element of a federal action to enforce ownership rights. (*Id.*) More specifically, Plaintiff argues, any allegation of separate tribal status for Orchard Party Oneida would not be plausible, and Defendants would be judicially estopped from making such an allegation because Defendant Phillips and others have previously claimed membership to the Oneida Nation and in its government. (*Id.*) In addition, Plaintiff argues, the federal government, through both the Department of Interior and the Department of Justice, has rejected the existence of an Orchard Party Tribe. (*Id.*) Finally, Plaintiff argues, District Judges Edmund Port, Neal McCurn, and Lawrence Kahn of this Court have decided that the Orchard Party Oneida are a part of the Oneida Nation, not a separate tribal entity. (*Id.*)

---

[1] *See, e.g., Pauma Band of Luiseno Mission Indians of the Paula and Yuima Reservation v. Unite Here Int'l Union*, 16-CV-2660, 2018 WL 4680029, at *6 (S.D. Cal. Sept. 28, 2018); *Oglala Sioux Tribe v. C & W Enter., Inc.*, 607 F. Supp.2d 1069, 1074 (D. S.D. 2009).

[2] Indeed, Plaintiff argues, Defendants' counterclaim fails to allege facts plausibly suggesting that the counterclaim arises under (1) the U.S. Constitution (because the only relevant constitutional provision would be the Supremacy Clause, but that Clause protects a tribe's aboriginal possession of land at the time the Constitution became effective and the Orchard Party Oneida was not such a tribe), (2) the laws of the United States (because there is no allegation that a federal statute protects Defendants' rights), or (3) the treaties of the United States (because, while the counterclaim mentions two treaties, both were made with Plaintiff and not the Orchard Party Oneida).

Third, Plaintiff argues that the counterclaim does not state a claim because, even if it were based on New York State law, it does not plausibly allege that New York State law gives Defendant Trust rights in the 19.6 acres in dispute. (*Id.*) More specifically, Plaintiff argues that, while the counterclaim identifies a state treaty dated June 24, 1842, it does not allege that there was federal approval and ratification of that treaty, which are requirements for a treaty to be valid in law and equity. (*Id.*)[3] Even setting aside the issue of validity, Plaintiff argues, the counterclaim admits that the 19.6 acres in dispute were not purchased by the state in the 1842 treaty (and thus their title stayed where it had been: with Plaintiff). (*Id.*) Indeed, Plaintiff argues, in prior Oneida land claim litigation, the Orchard Party admitted both (a) that it is part of Plaintiff and (b) that Plaintiff has a continued right to title and possession of, *inter alia*, the lands in question. (*Id.*) Finally, Plaintiff argues, even if the counterclaim were to sufficiently identify state law, that state law would not give rise to a claim by Defendants, because (a) the Orchard Party Oneida is not an Indian tribe recognized by the State in N.Y. Indian L. § 2, (b) the State has recognized (in a settlement agreement approved by Judge Kahn)[4] that the land in question belongs to Plaintiff, and (c) N.Y. Indian L. § 16 provides that the settlement agreement "supersede[s] any inconsistent laws and regulations." (*Id.*)

Fourth, Plaintiff argues that the counterclaim does not state a claim for the alternative reason that, based on its own factual allegations, it is barred by the doctrine of *res judicata*. (*Id.*)

---

[3] Indeed, Plaintiff argues that, when unsuccessfully trying to intervene in Oneida land claim litigation, the Orchard Party/Marble Hill Oneida alleged that the 1842 state treaty was illegal because it was made without federal approval and thereafter never federally ratified. (Dkt. No. 24, Attach. 2.)

[4] *See State of New York v. Jewell*, 08-CV-0644, Memorandum-Decision and Order of Approval (N.D.N.Y. filed March 4, 2014) (Kahn, J.).

More specifically, Plaintiff argues that, while Defendant Phillips objected to the settlement agreement, the settlement agreement was subsequently approved by Judge Kahn over Phillips' objection, and Phillips has not filed an appeal from that order of approval (which is a necessity for challenging the "[]correct[ness]" of the settlement now). (*Id.*) Moreover, Plaintiff argues that, although Defendants correctly argue that the Orchard Party Oneida was not a party to the settlement agreement, that fact is irrelevant, because (a) Judge Kahn's approval order required that third-party challenges to the settlement agreement be filed in that case, (b) in any event, when Defendant Phillips objected to the settlement agreement, he did so on behalf of the Orchard Party Oneida, thus putting in issue the land rights of Orchard Party Oneida in that litigation, and (c) in this action, the "Orchard Party Trust" is not even a genuine party but is merely the alter ego of Defendant Phillips. (*Id.*)

Fifth, Plaintiff argues that the counterclaim should be dismissed for the alternative reason that the Court lacks subject-matter jurisdiction over it as a result of the doctrine of tribal sovereign immunity. (*Id.*)[5] More specifically, Plaintiff argues that (a) the Court lacks subject-matter jurisdiction over a lawsuit against an Indian tribe such as Plaintiff unless the tribe has waived its sovereign immunity or Congress has abrogated it (neither of which has happened here), (b) tribal sovereign immunity applies regardless of whether a claim is presented in a complaint or in a counterclaim (and regardless of whether the counterclaim would negate a tribe's claim for declaratory relief against the counter-claimant), and (c) while an exception exists for counterclaims that do not seek affirmative relief against a tribe, here, Defendants' counterclaim does seek affirmative relief (specifically, a declaration and a relinquishment of rights). (*Id.*)

---

[5] In this respect, the Court construes Plaintiff's motion as being based not on Fed. R. Civ. P. 12(b)(6) but on Fed. R. Civ. P. 12(b)(1).

## 2. Defendants' Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendants assert the following three arguments. (Dkt. No. 27, Attach. 2 [Defs.' Opp'n Mem. of Law].)

First, Defendants argue that they have adequately alleged facts supporting this Court's jurisdiction and their entitlement to the relief sought. (*Id.*) More specifically, Defendants argue that the counterclaim sufficiently asserts federal jurisdiction by expressly invoking the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with regard to a claim that is so related to Plaintiff's claim as to form part of the same case or controversy (and, indeed, to involve the same federal law as does Plaintiff's claim). (*Id.*) In addition, Defendants argue that the counterclaim does not require Orchard Party to be a federally recognized or state-recognized Indian tribe because the rights to and possession of the land in dispute are protected interests under federal law and the decisions in *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005), and *Cayuga Indian Nation of New York v. Pataki*, 413 F.3d 266 (2d Cir. 2005). (*Id.*)

Second, Defendants argue that the quitclaim deed transferring assets to Defendant Trust is valid. (*Id.*) More specifically, Defendants argue that federal or state recognition is irrelevant to the question of Defendant Phillips being a successor in interest to Orchard Party land title vested by the Treaty of Buffalo Creek. (*Id.*) Further, Defendants argue that the settlement agreement in *Jewell* does not alter Orchard Party's claim to its land because (a) the counterclaim is consistent with the terms of the settlement agreement in that the 19.6 acres in dispute is not "Nation Land" pursuant to the settlement agreement given that Plaintiff had (and has) neither title nor possession of the land in dispute and has not made any application to the Secretary of the Interior for this land to be taken into trust, and (b) in any event, the settlement agreement

cannot affect the rights of non-parties such as Defendant Phillips. (*Id.*) Finally, Defendants argue that the counterclaim does not implicate the Nonintercourse Act, 25 U.S.C. § 177, because (a) no Orchard Party land is being alienated, and (b) in any event, and Defendant Phillips' quitclaim deed complies with the Act by being authorized by the congressionally approved Buffalo Creek Treaty. (*Id.*)

Third, Defendants argue that tribal sovereign immunity does not insulate Plaintiff from Defendants' counterclaim in this case. (*Id.*) More specifically, Defendants argue that the cases cited by Plaintiff are inapposite and that, as a matter of equity, a tribe should not permitted to voluntarily bring suit and then hide behind the doctrine of sovereign immunity to protect itself from countersuit on the exact same issues. (*Id.*) Moreover, Defendants argue that the Court should apply the immovable property exception to the doctrine of sovereign immunity in this case to overcome Plaintiff's purposed sovereign immunity defense to Defendants' counterclaim. (*Id.*)

### 3. Plaintiff's Reply Memorandum of Law

Generally, in reply to Defendants' opposition, Plaintiff asserts the following six arguments. (Dkt. No. 28 [Pl.'s Reply Mem. of Law].)

First, Plaintiff argues that Defendants' opposition does not dispute the legal rules on which Plaintiff's motion to dismiss is based, and that the opposition concedes or does not dispute the relevant facts. (*Id.*) More specifically, Plaintiff argues that Defendants' opposition does not dispute that the legal rules that (a) where an Indian tribe holds land by Indian title that is recognized by federal treaty and acknowledged to be part of the tribe's reservation, only a federal law or treaty can extinguish that title, (b) tribal land is held by the tribe indivisibly and

8

collectively for all members and, thus, that tribal members do not acquire rights in tribal land by living on it, and (c) federal common law and the Nonintercourse Act protect only the rights of Indian tribes with respect to Indian title. (*Id.*) In addition, Plaintiff argues that Defendants' opposition concedes or does not dispute the fact that (a) the 19.6 acres in question are part of the land recognized by the United States in the Treaty of Canandaigua as the property of Plaintiff, (b) the Orchard Party Oneida are members of Plaintiff, and (c) Defendant Phillips is an admitted member of Plaintiff and lives on Plaintiff's unceded land. (*Id.*) Finally, Plaintiff argues that these concessions compel the conclusion that the Orchard Party Oneida could not have acquired Indian title to Plaintiff's land. (*Id.*)

Second, Plaintiff agues that Defendants' reliance on the Treaty of Buffalo Creek cannot save their counterclaim. (*Id.*) More specifically, Plaintiff argues that, while Defendants argue that the Treaty of Buffalo Creek "recognized" Orchard Party title, the Treaty did not recognize a division of Plaintiff into separate tribes; nor does the counterclaim allege that Plaintiff ceded or otherwise conveyed land to the Orchard Party Oneida in the Treaty. (*Id.*) Moreover, Plaintiff argues that, when the State of New York, Madison County, and Oneida County previously argued that the Treaty of Buffalo Creek recognized land rights in Oneida factions (such as the Orchard Party Oneida or the First Christian Party), Judge Kahn rejected that construction of the Treaty of Buffalo Creek and held that the treaty treated the Oneida as one Nation. (*Id.*) *See also Oneida Indian Nation v. State of New York*, 194 F. Supp. 2d 104, 119 (N.D.N.Y. 2002) (Kahn, J.).

Third, Plaintiff agues that Defendants' reliance on supplemental jurisdiction cannot save their counterclaim, because supplemental jurisdiction over state law claims to protect ownership

9

by a state law trust is inconsistent with a claim of Indian title. (Dkt. No. 28.) More specifically, Plaintiff argues that Defendants' claim of Indian title can arise only under federal law. (*Id.*) In addition, Plaintiff argues that the counterclaim contradictorily alleges that Defendant Phillips can make a state law conveyance, to a state law trust, of an Indian title that is possessed by a *third-party*, i.e., the Orchard Party Oneida. (*Id.*) This is impossible, Plaintiff argues, because the "trust" is not the Orchard Party Oneida, and the Orchard Party Oneida is not the trust beneficiary. (*Id.*) Finally, Plaintiff argues, even if the Orchard Party Oneida were deeding the land in question, there would be a violation of the Nonintercourse Act, because it is Plaintiff, and not the Orchard Party Oneida, that holds title to the land. (*Id.*)

Fourth, Plaintiff argues that Defendants have not sufficiently refuted Plaintiff's argument that Defendant Phillips objected to the settlement agreement but failed to appeal from Judge Kahn's approval order, which confirmed Plaintiff's continued title to the land in dispute. (*Id.*) More specifically, Plaintiff argues that Defendants do not dispute the fact that Defendant Phillips filed an objection to the settlement on the ground that it eliminated the Orchard Party Oneidas' land rights in question, then he lost on that objection and chose not to appeal. (*Id.*) Moreover, Plaintiff argues, although Defendants respond that their counterclaim is not precluded by Judge Kahn's approval order (specifically, the portion requiring that third-party challenges to the settlement agreement be filed in that action) because their counterclaim does not challenge the settlement agreement, Defendants are mistaken: Paragraphs 69 to 72 of the Answer allege that the settlement agreement was "incorrect[]" in defining the land in question as being retained by Plaintiff (and not the Orchard Party Oneida), and was followed within 18 months by Defendant Phillips' execution of the quitclaim deed at issue in this action. (*Id.*)

Fifth, Plaintiff argues that Defendants' reliance the equitable considerations applied in the *Sherrill* and *Cayuga* decisions is misplaced because (a) those two decisions were based on reliance interests created by cessation of Plaintiff's land to non-Indians, (b) here, it is undisputed that the land in question was never ceded by Plaintiff, and (c) in any event, equitable principles cannot be applied to transfer ownership of tribal land to tribal members who live on it. (*Id.*)

Sixth, Plaintiff argues that Defendants' attempt to evade the fatal impact of the doctrine of tribal sovereign immunity is in vain. (*Id.*) More specifically, Plaintiff argues that Defendants do no persuasively distinguish Plaintiff's tribal-sovereign-immunity cases. (*Id.*) Furthermore, Plaintiff argues that the dismissal of Defendants' counterclaim on tribal-sovereign-immunity grounds does not prohibit Defendants from defending against Plaintiff's Complaint and resisting the relief sought by Plaintiff; it merely prohibits Defendants from seeking independent, affirmative relief against Plaintiff. (*Id.*) Finally, Plaintiff argues, as for the immovable-property-exception to the doctrine of sovereign immunity (which is being litigated in a case that is now pending in the Supreme Court), there is no way to know whether the exception might or might not affect the sovereign immunity issue in this case: controlling Second Circuit authority currently holds tribal sovereign immunity applicable to litigation regarding real property. (*Id.*)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[6]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

---

[6] *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

13

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[7]

### B. Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims and Defendants' counterclaim in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for the review of the parties. (*See generally* Dkt. No. 24, Attach. 2 [Pl.'s Mem. of Law]; Dkt. No. 27 [Defs.' Opp'n Mem. of Law]; Dkt. No. 28 [Pl.'s Reply Mem. of Law].)

---

[7] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

15

**III. ANALYSIS**

After carefully considering the matter, the Court grants Plaintiff's motion to dismiss Defendants' counterclaim for each of the numerous alternative reasons stated in Plaintiff's memoranda of law. (Dkt. No. 24, Attach. 2 [Pl.'s Mem. of Law]; Dkt. No. 28 [Pl.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Plaintiff's arguments.

"The rudimentary propositions that Indian title is a matter of federal law and can be extinguished only with federal consent apply in all of the States, including the original 13." *Oneida Indian Nation v. Oneida County, New York*, 414 U.S. 661, 670 (1974).

The Nonintercourse Act, first passed in 1790, "provided that 'no sale of lands made by any Indians . . . within the United States, shall be valid to any person . . . or to any state . . . unless the same shall be made and duly executed at some public treaty held under the authority of the United States.' This has remained the policy to this day." *Oneida Indian Nation v. Oneida County, New York*, 414 U.S. at 667-68. "Unquestionably it has been the policy of the federal government from the beginning to respect the Indian right of occupancy, which could only be interfered with or determined by the United States." *Cramer v. United States*, 261 U.S. 219, 227 (1923) (citing *Beecher v. Wetherby*, 95 U.S. 517, 525 [1877]; *State of Minnesota v. Hitchcock*, 185 U.S. 373, 385 [1902]); *see also Johnson v. M'Intosh*, 8 Wheat. 543 (1823) (refusing to recognize land titles originating in grants by Indians to private parties in 1773 and 1775 because those grants were contrary to the accepted principle that Indian title could be extinguished only by or with the consent of the general government); *In re New York Indians*, 72 U.S. 761, 771, 769 (1866) (holding that "[a]ll agree that the Indian right of occupancy creates an

16

indefeasible title to the reservations that may extend from generation to generation, and will cease only by the dissolution of the tribe, or their consent to sell to the party possessed of the right of pre-emption," and noting that New York "possessed no power to deal with Indian rights or title").

Here, the factual allegations contained in the counterclaim fail to plausibly suggest a claim to the 19.6 acres in dispute because the allegations admit that the land was Plaintiff's (Dkt. No. 17, at ¶ 60) and do not allege that Plaintiff ever ceded rights to the land or that the federal government gave its consent to such a transaction (*see generally id.* at ¶¶ 54-76). Instead, Defendants allege that, pursuant to a separate June 25, 1842, treaty with the State of New York (the Treaty of Buffalo Creek), the 19.6 acres in dispute were "reserved" for the Orchard Party Oneida. (Dkt. No. 17, at ¶ 64.) However, courts have held that, after 1805, the United States treated the Oneidas as a unified nation. These facts undermine Defendants' argument that the Court should consider Orchard Party Oneida as a separate tribe from Plaintiff, with independent tribal rights to the 19.6 acres in dispute. *Oneida Indian Nation v. New York*, 194 F. Supp. 2d 104, 119 n.8 (N.D.N.Y. 2002) (Kahn, J.).[8]

Finally, the Court also notes that, after the parties completed their briefing of Plaintiff's motion, the Supreme Court issued its decision in *Upper Skagit Indian Tribe v. Lundgren,* 138 S. Ct. 1649, 1650-51 (2018). That decision did not resolve the issue of whether to limit the scope of sovereign immunity with respect to immovable property. As a result, the settled precedent in the Second Circuit remains that "courts must 'dismiss[] any suit against a tribe absent

---

[8] Judge Khan further held that, with regard to the Treaty of Buffalo Creek, the United States government dealt with and treated the Oneidas as one nation. *Oneida Indian Nation v. New York*, 194 F. Supp. 2d at 119.

congressional authorization (or waiver)' . . . . and the Supreme Court (like this Court) has 'thought it improper suddenly to start carving out exceptions' to that immunity, opting instead to 'defer' to the plenary power of Congress to define and otherwise abrogate tribal sovereign immunity from suit." *Cayuga Indian Nation v. Seneca County, N.Y.*, 761 F.3d 218, 220 (2d Cir. 2014) (citing *Michigan v. Bay Mills Indian Community*,134 S. Ct. 2024, 2030-31 [2014]).

For all of these reasons, the Court grants Plaintiff's motion to dismiss Defendants' counterclaim.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion to dismiss Defendants' counterclaim (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED** that Defendants' Counterclaim (Dkt. No. 17) is **DISMISSED**; and it is further

**ORDERED** that this case is referred back to Magistrate Judge Baxter for a Rule 16 conference and the setting of pretrial scheduling deadlines.

Dated:	November 15, 2018
	Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge