UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ONEIDA INDIAN NATION,

                              Plaintiff,

v.                                                                    5:17-CV-1035
                                                                      (GTS/ATB)

MELVIN L. PHILLIPS, SR., Individually and as
Trustee; and MELVIN L. PHILLIPS, SR. /
ORCHARD PARTY TRUST,

                              Defendants,
_____

APPEARANCES:                                        OF COUNSEL:

ONEIDA INDIAN NATION                        MEGHAN MURPHY BEAKMAN, ESQ.
  Co-Counsel for Plaintiff
5218 Patrick Road
Verona, New York 13478

ZUCKERMAN SPAEDER LLP                    MICHAEL R. SMITH, ESQ.
  Co-Counsel for Plaintiff
1800 M Street, N.W., Suite 1000
Washington, DC 20036-5802

ARNOLD & PORTER KAYE SCHOLER LLP      ERIC NEVINS WHITNEY, ESQ.
  Counsel for Defendants                                 GLENN J. POGUST, ESQ.
250 West 55th Street
New York, New York 10019

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this real property action filed by the Oneida Indian Nation

("Plaintiff") against Melvin L. Phillips, Sr., individually and as Trustee ("Defendant Phillips"),

and Melvin L. Phillips, Sr./Orchard Party Trust ("Defendant Trust") (collectively "Defendants"),

is Plaintiff's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No.

32.)  For the reasons set forth below, Plaintiff's motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Procedural History

On November 15, 2018, the Court issued a Decision and Order that summarized Plaintiff's claims and dismissed Defendants' counterclaim.  (Dkt. No. 30.)  Familiarity with Plaintiff's Complaint, Defendants' Answer, and the Court's Decision and Order of November 15, 2018, is assumed in this Decision and Order, which is intended primarily for the review of the parties.

On June 11, 2019, the Court issued a Text Order denying Defendants' motion (Dkt. No. 39) to strike section "C" of Plaintiff's reply memorandum of law (Dkt. No. 38), but granting Defendants' alternative request for leave to file a sur-reply, which they have done.  (Dkt. Nos. 41, 42.)

### B.     Parties' Briefing on Plaintiff's Motion for Judgment on the Pleadings

#### 1.     Plaintiff's Memorandum of Law-in-Chief

Generally, in support of its motion for judgment on the pleadings, Plaintiff argues that, for the same reason that the Court dismissed Defendants' counterclaim, Plaintiff is entitled to judgment as a matter of law in the form of declaratory and injunctive relief to quiet title to the 19.6 acre tract (the "Property"), which has a cloud on its title caused by Defendant Phillips' recordation of a quitclaim deed that he manufactured.  (Dkt. No. 32, Attach. 1 [Pl.'s Mem. of Law].)  More specifically, Plaintiff argues that, in its Decision and Order of November 15, 2018, the Court accepted Plaintiff's argument that the Property is part of the Oneida Nation's reservation based on unextinguished Indian title, and rejected Defendants' claim to the Property.

2

(*Id.*)  Plaintiff further argues that its right to the Property was acknowledged in the 1794 Treaty of Canandaigua, its right is federally protected, it has never alienated the Property with federal approval or otherwise, and therefore, Defendants have no claim to the Property on behalf of Orchard Party, who, in any event, are members of the Oneida Nation and thus lack independent tribal rights to the Property.  (*Id.*)

### 2.      Defendants' Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendants assert the following three arguments.  (Dkt. No. 37 [Defs.' Opp'n Mem. of Law].)[1]

First, Defendants argue that the standard for dismissing a counterclaim for failure to state a claim is significantly different than the standard for granting a motion for judgment on the pleadings.  (*Id.*)  More specifically, Defendants argue that granting the motion to dismiss the counterclaim for failure to state a claim required Plaintiff to demonstrate only that Defendants had not alleged facts plausibly suggesting a claim for relief–pursuant to *Iqbal* and *Twombly*–whereas, granting Plaintiff's motion for judgment on the pleadings requires a showing that (a) there exists no issue of material fact, (b) the Answer fails to meet the minimal requirements of notice pleadings pursuant to Fed. R. Civ. P. 8(b), or (c) the disputed factual issues raised in the Answer are immaterial or too implausible to ever be supported by discovery.  (*Id.*)  Defendants argue that their counterclaim alleged that they were affirmatively entitled to relief, whereas their denials and affirmative defenses contained in the Answer dispute that Plaintiff is entitled to relief and raise issues of material fact, which bar Plaintiff's motion for

---

[1]      The Court notes that, on the cover page of their motion, Defendants state "ORAL ARGUMENT REQUESTED."  (Dkt. No. 37, at 1 [emphasis removed].)  However, Defendants' request was not supported by a showing of cause for such oral argument.

judgment on the pleadings. (*Id.*) Moreover, Defendants argue that they assert arguments "sounding in real property law regarding successors-in-interest, possession, and abandonment" that have not been addressed by Plaintiff. (*Id.*) Finally, Defendants argue that, if there is even a chance that they will be able to offer facts supporting their defenses and undermining Plaintiff's claims at trial, they are entitled to seek discovery; and therefore Plaintiff's motion for judgment on the pleadings must be denied. (*Id.*)

Second, Defendants argue that the Court's Decision and Order of November 15, 2018, determined that Defendants' counterclaim failed to allege facts plausibly suggesting entitlement to relief but it did not make any findings of fact or conclusions of law in the case. (*Id.*) More specifically, Defendants argue that the Court's Decision and Order of November 15, 2018, did not find that Plaintiff had affirmatively proven any facts or imply that Defendants will never be able to offer evidence supporting their defense. (*Id.*) Defendants argue that disputed issues of fact remain to be resolved at trial including the validity and interpretation of the deed documents that Defendant Phillips executed. (*Id.*) As a result, Defendants argue that this case should proceed on the normal path to trial, where Plaintiff can attempt to carry the burden to prove its claims. (*Id.*)

Third, Defendants argue that numerous disputes of fact preclude judgment on the pleadings. (*Id.*) More specifically, Defendants argue as follows: (a) Plaintiff fails to frame its arguments in the context of the higher burden required for a motion for judgment on the pleadings, which makes it difficult for Defendants to meaningfully respond; (b) disputed issues of fact exist regarding whether the Property (i) was ceded or abandoned by Plaintiff, (ii) was ever possessed by Plaintiff, and (iii) was possessed by Plaintiff within ten years before

commencement of this action; and (c) disputed issues of fact exist regarding Defendants' rights to the land at issue pursuant to real property law which does not require tribal sovereignty.  (*Id.*)

**3.      Plaintiff's Reply Memorandum of Law**

Generally, in reply to Defendants' opposition, Plaintiff asserts the following three arguments.  (Dkt. No. 38 [Pl.'s Reply Mem. of Law].)

First, Plaintiff asserts that it agrees with Defendants that the standard for granting judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is that "the disputed factual issues raised by the Answer are either immaterial or too implausible to ever be supported by discovery" or that there remain no material issues of fact.  (*Id.*)

Second, Plaintiff argues that Defendants' admissions and the controlling law entitle Plaintiff to judgment as a matter of law because there are no factual disputes that could alter the outcome.  (*Id.*)  More specifically, Plaintiff argues that Defendants admit the following facts: (a) the Property was part of the original Oneida reservation acknowledged at the 1794 Treaty of Canandaigua; (b) the Property was never conveyed to New York State, with or without federal approval, (c) Indian title can be extinguished only with federal consent; and (d) the Orchard Party Oneidas could not acquire Indian title to Plaintiff's land because there was no federal consent to do so and tribal members do not acquire rights in tribal land by living on it.  (*Id.*)  In addition, Plaintiff argues that (a) the Court has already dismissed, as a matter of law, Defendants' claim to the Property, which is the defense that their Answer attempts to establish, and (b) based on the Answer, it is not plausible that there are facts which, if proven, could establish Defendant's ownership defense.  (*Id.*)  Furthermore, Plaintiff argues that the discovery Defendants seek does not concern any material fact for the following reasons: (a) the 1794 Treaty of Canandaigua

clearly states that the Property is reserved to the Oneida and is Oneida property; (b) no transfer of the Property is alleged; (c) Defendants' concession that they are members of the Oneida Nation establishes that Oneida Nation members have continuously lived on the Property, and thus the Oneida Nation has not abandoned it, and tribal members do not acquire tribal land by living on it; and (d) the 1838 Treaty of Buffalo Creek was made with the Oneidas, not the Orchard Party Oneidas.  (*Id.*)

Third, Plaintiff argues that Defendants' affirmative defenses fail as a matter of law, and therefore discovery is not necessary.  (*Id.*)  More specifically, Plaintiff argues as follows: (a) the Eleventh Amendment limits federal jurisdiction over states and is irrelevant here; (b) Defendants did not join any other party to their counterclaim, which mirrored Plaintiff's claim, and there is nothing to indicate that any other party claims ownership of the Property; (c) there is no applicable federal statute of limitations for tribal enforcement of federally protected land rights; (d) the doctrines of collateral estoppel and res judicata depend on a particular judgment and the Answer and Defendants' opposition memorandum of law fail to identify any; (e) release and accord and satisfaction are inapplicable here because only a federal statute or treaty can affect tribal land rights; (f) Defendants fail to identify an act of Congress that could affect Plaintiff's right to judgment and discovery is not needed to exchange public statutes or treaties; (g) with respect to the defense of laches, (i) Defendants do not assert prejudice from the timing of this lawsuit, which was filed two years after they filed the trust and deed papers, and (ii) Defendants cannot invoke "laches" as the term was used in *Cayuga Indian Nation v. Pataki*, 413 F.3d 266 (2d Cir. 2005), which referred to the disruptive effect of disturbing title to land occupied for generations by non-Indians in reliance on the validity of 200-year-old state land transactions

6

because (1) Defendants assert rights based only on occupancy by members of the Oneida Nation

on tribal land, and (2) Defendant Phillips had to manufacture and file a quitclaim deed in the

county records because no prior title or chain of titles to the Property existed; (h) Defendants do

not provide any reason that it would be impossible for the Court to quiet title to the Property, and

Plaintiff does not seek to evict anyone; (i) tribal claims to preserve federal protection of tribal

lands are justiciable; (j) Defendants answered Plaintiff's Complaint, rather than moving to

dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and in their Answer,

Defendants admitted that the Property was within the Oneida Nation's reservation pursuant to the

1794 Treaty of Canandaigua and was not thereafter conveyed to New York State; (k) as a matter

of law, Plaintiff cannot be said to have acquiesced in Defendants' filing of the deed and trust

because (i) Defendants conceded that there is no claim that Orchard Party is a separate tribe from

the Oneida Nation, (ii) tribal members do not acquire rights to tribal land by living on it, (iii)

Plaintiff brought this lawsuit two years after Defendants filed the challenged deed and trust, and

(iv) Plaintiff's interest in land protected by a federal treaty cannot be extinguished without

federal approval; and (l) abandonment is not applicable here where Defendants admit that

generations of Orchard Party Oneida descendants have continuously occupied the Property, and

the Orchard Party Oneidas are part of, and not broken away from, the Oneida Nation.  (*Id.*)

### 4.     Defendants' Sur-Reply Memorandum of Law

Generally, in their sur-reply, Defendants assert the following two arguments.  (Dkt. No.

42 [Defs.' Sur-Reply Mem. of Law].)

First, Defendants argue that Plaintiff has failed to carry its burden to show that

Defendants' affirmative defenses fail as a matter of law.  (*Id.*)  More specifically, Defendants

argue that Plaintiff has improperly attempted to shift the burden of persuasion to Defendants by arguing that Defendants have failed to "explain" or "sustain" their affirmative defenses, although the burden is on the moving party to establish its entitlement to judgment as a matter of law. (*Id.*)  In addition, Defendants argue that their affirmative defenses bar Plaintiff's motion for the following reasons: (a) they properly and timely raised the defense of failure to join an indispensable party identifying the United States, State of New York, Oneida County, and Town of Vernon as indispensable parties; (b) as a basis for the defenses of release and accord and satisfaction, Defendants identified the 1838 Treaty of Buffalo Creek, which extinguished Plaintiff's rights to the Property and recognized Defendants' proprietary interest in the land; (c) they appropriately raised as an affirmative defense in their Answer, failure to state a claim and Plaintiff carries the burden–but failed to rebut–this invulnerable defense; (d) they raised the defense of acquiescence and estoppel, which is not dependent on any claim of independent sovereignty by the Orchard Party but instead relates to the Property rights that were conveyed by Plaintiff to the Orchard Party in the 1838 Treaty of Buffalo Creek; and (e) they raised the defense of abandonment and (i) the Court's dismissal of Defendant's counterclaim did not imply a determination that Defendants can prove no set of facts to support of this defense, and (ii) Plaintiff's theory that Defendants' occupation of the Property supports Plaintiff's continuity of occupation fails to consider discontinuities between the historical Oneida tribe and the modern Oneida Indian Nation.  (*Id.*)

Second, Defendants argue that material facts are in dispute that require the development of the factual record and an examination of the historical context of treaties prior to resolution. (*Id.*)  More specifically, Defendants argue that issues of material fact exist in the following

regards: (a) Plaintiff abandoned the Property, which is evinced by discontinuities between the historical Oneida tribe and the modern day Oneida Indian Nation; and (b) Defendants obtained the Property through the 1838 Treaty of Buffalo Creek Treaty (in which the United States recognized that the Orchard Party had a proprietary interest in the Property and authorized Orchard Party chiefs to make arrangements with New York for the purchase of their lands) and through the 1842 Treaty with New York State (in which the Orchard Party chiefs sold several parcels of land surrounding the Property but made arrangements to remain on the Property).  (*Id.*)

## II.      GOVERNING LEGAL STANDARDS

### A.      Legal Standard Governing Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure "permits the entry of judgment as a matter of law on the basis of the pleadings alone." *Barber v. RLI Ins. Co.*, 06-CV-0630, 2008 WL 5423106, at \*2 (N.D.N.Y. Dec. 24, 2008) (Scullin, J.) (citing *Jackson v. Immediate Credit Recovery, Inc.*, 05-CV-5697, 2006 WL 343180, at \*4 [E.D.N.Y. Nov. 28, 2006]).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  "However, when it is a plaintiff who files such a motion, the Court accepts as true only the allegations in the complaint that the defendant has not denied." *Edwards v. Jenkins*, 12-CV-10312, 2013 WL 8366052, at \*1 (E.D. Mich. Nov. 21, 2013) (citing *Kule-Rubin v. Bahari Grp. Ltd.*, 11-CV-2424, 2012 WL 691324, at \*3 [S.D.N.Y. Mar. 5, 2012] [explaining that "plaintiff is entitled to judgment on the pleadings where the defendant's answer fails to deny the elements constituting a cause of action"]); *see also Gen. Conference Corp. of the Seventh-Day Adventists v. Seventh-Day*

9

*Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989) ("A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.  Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings."); *Hamilton v. Yates*, 10-CV-1925, 2014 WL 4660814, at *1 (E.D. Cal. Sept. 17, 2014) ("A plaintiff may bring the motion if the answer fails to controvert material facts alleged in the complaint.").

In considering "plaintiff's Rule 12(c) motion for a judgment on the pleadings, the Court must draw all reasonable inferences in favor of the non-moving party.  Therefore, the plaintiff is entitled to judgment on the pleadings only if it has established that there remains no material issue of fact to be resolved and that it is entitled to judgment as a matter of law."  *United States v. Lankford*, 98-CV-0407, 1998 WL 641350, at *1 (N.D.N.Y. Sept. 10, 1998) (McAvoy, C.J.) (citing *Shechter v. Comptroller of the City of New York*, 79 F.3d 265, 270 [2d Cir. 1996]; *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 [2d Cir. 1990]); *see also Kertesz v. General Video Corp.*, 09-CV-1648, 2010 WL 11506390, at *2 (S.D.N.Y. Mar. 31, 2010) (citing *Rivera v. Schweiker*, 717 F.2d 719, 722 [2d Cir. 1983]) ("A motion for judgment on the pleadings under Fed. R. Civ. P. 12[c] is designed to provide a means of disposing cases when the material facts are not in dispute.  A Rule 12[c] motion will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."); *Barber*, 2008 WL 5423106, at *2 (holding that the court must draw all inferences in favor of the non-moving party and only grant a motion for judgment on the pleadings if the movant establishes that "no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law").

Much like a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider any document annexed to it as an exhibit. *Lankford*, 1998 WL 641350, at *1 (citing Fed. R. Civ. P. 10[c]; *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 [2d Cir. 1996], *cert. denied* 519 U.S. 1007 [1996]); *see also Barber*, 2008 WL 5423106, at *2 ("Pleadings include attached exhibits and documents incorporated by reference.").

### B.   Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims and Defendants' affirmative defenses in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for the review of the parties. (*See generally* Dkt. No. 32, Attach. 1 [Pl.'s Mem. of Law]; Dkt. No. 37 [Defs.' Opp'n Mem. of Law]; Dkt. No. 38 [Pl.'s Reply Mem. of Law]; Dkt. No. 42 [Defs.' Sur-Reply Mem. of Law].)

## III.   ANALYSIS

After carefully considering the matter, the Court grants Plaintiff's motion to for judgment on the pleadings for each of the alternative reasons stated in Plaintiff's memoranda of law. (Dkt. No. 32, Attach. 1 [Pl.'s Mem. of Law]; Dkt. No. 38 [Pl.'s Reply Mem. of Law].) To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Plaintiff's reasons.

This is a rare case that does not involve issues of material fact between the parties, but rather the interpretation of statutes and post-1794 treaties. (*See, e.g.,* Dkt. No. 17, at ¶ 60 [Defs.' Answer, admitting that "[t]he property at issue in this case was part of the original Oneida

reservation" pursuant to the 1794 Treaty of Canandaigua].)  Based on those statutes and treaties,

the Court finds that there is no issue of material fact that the Property is still part of the Oneida

Indian reservation.  *See, e.g., Upstate Citizens for Equality v. Jewell*, 841 F.3d 556, 562 (2d Cir.

2016) ("[T]he Oneidas' original reservation [following the 1794 Treaty of Canandaigua] was

never officially 'disestablished.'"); *Oneida Indian Nation v. Madison Cty.*, 665 F.3d 408, 443 (2d

Cir. 2011) ("It remains the law of this Circuit that "the Oneidas' reservation was not

disestablished . . . .").

> In support of their argument that the 1838 Treaty of Buffalo Creek "reserved" for them

the Property, Defendants rely on a provision that provides as follows:

> ARTICLE 4. Perpetual peace and friendship shall exist between the
> United States and the New York Indians; and the United States hereby
> guaranty to protect and defend them in the peaceable possession and
> enjoyment of their new homes, and hereby secure to them, in said country,
> the right to establish their own form of government, appoint their own
> officers, and administer their own laws; subject, however, to the
> legislation of the Congress of the United States, regulating trade and
> intercourse with the Indians. The lands secured them by patent under this
> treaty shall never be included in any State or Territory of this Union. The
> said Indians shall also be entitled, in all respects, to the same political and
> civil rights and privileges, that are granted and secured by the United
> States to any of the several tribes of emigrant Indians settled in the Indian
> Territory.

(Dkt. No. 17, at ¶¶ 16, 17, 64 [Defs.' Answer, citing Article 4]; Dkt. No. 17, Attach. 1, at 3 [Ex.

to Defs.' Answer, attaching Article 4].) However, this Court has specifically held that after

1805–and, in particular, in the 1838 Treaty of Buffalo Creek–the United States treated the

Oneidas as a single unified nation.  *See Oneida Indian Nation of New York v. New York*, 194 F.

Supp. 2d 104, 119 & n.8 (N.D.N.Y. 2002) (Kahn, J.) ("[T]he United States government, in . . .

[the 1838 Treaty of Buffalo Creek] with the Oneidas, treated the Oneidas as one nation.") (citing

Treaty of Buffalo Creek, Jan. 15, 1838, U.S.-New York Indians, art. 2, 7 Stat. 550).  This fact

fatally undermines Defendants' allegation that the Court should consider Orchard Party Oneida

as a separate tribe from Plaintiff, with independent tribal rights to the Property.

     The other provision of the 1838 Treaty of Buffalo Creek that Defendants rely on (to

support their argument that the Property was granted to them) provides as follows:

> SPECIAL PROVISIONS FOR THE ONEIDAS
> RESIDING IN THE STATE OF NEW YORK
> .
>
>     ARTICLE 13. The United States will pay the sum of four thousand
> dollars, to be paid to Baptista Powlis, and the chiefs of the first Christian
> party residing at Oneida, and the sum of two thousand dollars shall be paid
> to William Day, and the chiefs of the Orchard party residing there, for
> expenses incurred and services rendered in securing the Green Bay
> country, and the settlement of a portion thereof; and they hereby agree to
> remove to their new homes in the Indian territory, as soon as they can
> make satisfactory arrangements with the Governor of the State of New
> York for the purchase of their lands at Oneida.

(Dkt. No. 17, at ¶¶ 1, 8, 24, 25, 61 [Defs.' Answer, citing Article 13]; Dkt. No. 17, Attach. 1, at 5

[Ex. to Defs.' Answer, attaching Article 13].)  However, by its plain language, this provision

does not cede Plaintiff's right to the Property.  As a result, the federal government did not, and

could not, give its consent to such a transaction, as is required for the transfer of Indian land.

(*Id.*)  *See also* 1 Stat. 330, § 8; *Cherokee Nation v. Georgia*, 30 U.S. 1, 32 (1831) ("[T]he Indians

are acknowledged to have an unquestionable, and heretofore unquestioned, right to the lands they

occupy, until that right shall be extinguished by a voluntary cession to our government.");

*Oneida Cty., N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 231-32 (1985)

(noting that the Nonintercourse Act provided that "'no purchase or grant of lands, or of any title

or claim thereto, from any Indians or nation or tribe of Indians, within the bounds of the United

13

States, shall be of any validity in law or equity, unless the same be made by a treaty or convention entered into pursuant to the constitution . . . [and] in the presence, and with the approbation of the commissioner or commissioners of the United States' appointed to supervise such transactions"); *Oneida Indian Nation of N.Y. State v. Oneida Cty., New York*, 414 U.S. 661, 678 (1974) (holding that the Nonintercourse Act "put in statutory form what was or came to be the accepted rule–that the extinguishment of Indian title required the consent of the United States"). As a result, the Court must find, as a matter of law, that the 1838 Treaty of Buffalo Creek did not recognize any proprietary interest of the Orchard Party Oneidas in the Property–as a "faction" of Plaintiff or otherwise–to arrange for the purchase of the Property with the Governor of the State of New York.

In sum, because the 1838 Treaty of Buffalo Creek did not grant Orchard Party Oneidas any rights in the Property, the 1842 Treaty with New York State could not, and did not, reflect a proper agreement between the Governor of New York State and the Orchard Party Oneidas for the purchase of the Property.

Furthermore, while affirmative defenses usually bar judgment on the pleadings, Defendants' defenses do not raise any issues of material fact that, if true, would bar the recovery sought by Plaintiff in its motion. *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventists Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1368 [1969]).

More specifically, Defendant assert the following fourteen affirmative defenses in their Answer: (1) the Eleventh Amendment of the U.S. Constitution; (2) the failure to join all indispensable parties including the United States, the State of New York, Oneida County and the

14

Town of Vernon; (3) the statute of limitations; (4) the doctrine of collateral estoppel; (5) the doctrine of res judicata; (6) release; (7) accord and satisfaction; (8) Congressional act; (9) the doctrine of laches; (10) impossibility; (11) the failure to present a justiciable dispute; (12) the abandonment by Plaintiff of any rights it may have to Orchard Party Trust lands; (13) the failure to state a claim upon which relief can be granted; and (14) the doctrine of acquiescence and estoppel.  (Dk. No. 17, at ¶¶ 40-53 [Defs.' Answer].)

In their motion papers, Defendants do not specifically address, and thus abandon (for purposes this motion), their reliance on their First, Third, Fourth, Fifth, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses.  (*See generally* Dkt. No. 37, at 14-16, 23-25 [attaching pages "8" through "10," and pages "17" through "19," of Defs.' Opp'n Mem. of Law, mentioning only "abandon[ment]"]; Dkt. No. 42, at 6-12 [attaching pages "2" through "8" of Defs' Sur-Reply Mem. of Law].)[2]  In any event, for the reasons set forth in Plaintiff's reply memorandum of law, the Court finds that these eight affirmative defenses do not bar the relief requested in Plaintiff's motion.  (Dkt. No. 38, at 8-12 [attaching pages "6" through "10" of Pl.'s Reply Mem. of Law].)

The Court reaches the same conclusion with regard to the six affirmative defenses on which Defendants do specifically rely in their memoranda of law: their Second, Sixth, Seventh, Twelfth, Thirteenth and Fourteenth Affirmative Defenses.  (Dkt. No. 37, at 24 [attaching page "18" of Defs.' Opp'n Mem. of Law, mentioning "abandon[ment]"]; Dkt. No. 38, at 8-12

---

[2]        *Cf. Plahutnik v. Daikin Am., Inc.*, 10-CV-1071, 2012 WL 6108236, at *5 (S.D.N.Y. Dec. 6, 2012) ("Arguments not made in opposition to a motion for summary judgment are deemed abandoned."); *Jain v. McGraw-Hill Cos., Inc.*, 827 F. Supp. 2d 272, 280 (S.D.N.Y. 2011) (holding that the plaintiff abandoned six claims when her brief failed to respond to the defendants' arguments on those claims); *Lipton v. Cty. of Orange, N.Y.*, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) ("[A court] may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

[attaching pages "6" through "10" of Pl.'s Reply Mem. of Law]; Dkt. No. 42, at 6-12 [attaching

pages "2" through "8" of Defs.' Sur-Reply Mem. of Law].)

With regard to Defendants' Second Affirmative Defense (failure to join all indispensable

parties), neither the Complaint nor Answer has alleged–even conclusorily–that the United States,

State of New York, County of Oneida, Town of Vernon, or any other individual or entity has any

claim to, or interest in, the Property, or is necessary for the Court to accord complete relief.  *See*

Fed. R. Civ. P. 19(a)(1) (explaining that, for a person to be joined as a required party, either the

person must "claim[] an interest related to the subject of the action" or the person must be

necessary for the court to "accord complete relief").  Indeed, in their Answer, Defendants admit

that "the State never obtained the 19.6 acres at issue in this case."  (Dkt. No. 17, at ¶ 12 [Defs.'

Answer].)  For all of these reasons, the Court finds that this affirmative defense cannot bar the

relief requested in Plaintiff's motion.

With regard to Defendants' Sixth and Seventh Affirmative Defenses (release and accord

and satisfaction), "[u]nder New York law, an accord and satisfaction is the resolution of a

disputed, unliquidated claim through a new contract 'discharging all of part of [the parties']

obligations under the original contract,' and constitutes a complete defense to a claim for breach

of contract."  *Carnrite v. Granada Hosp. Grp., Inc.,* 175 F.R.D. 439, 449 (W.D.N.Y. 1997)

(quoting *Conboy, McKay, Bachman & Kendall v. Armstrong*, 110 A.D.2d 1042, 1042 [N.Y. App.

Div. 4th Dep't 1985]).  Moreover, "[a] release is a provision that intends to present abandonment

of a known right or claim."  *McMahan & Co. v. Bass,* 250 A.D.2d 460, 461 (N.Y. App. Div. 1st

Dep't 1998).  Here, neither the Complaint nor Answer has (even when viewed in context)

plausibly alleged that such release or accord and satisfaction exist.  Moreover, only a federal

16

statute or treaty can affect tribal land rights.  *See* 25 U.S.C. § 177 ("No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution."); *Oneida Indian Nation v. Cty. of Oneida*, 414 U.S. 661, 670 (1974) ("The rudimentary propositions that Indian title is a matter of federal law and can be extinguished only with federal consent apply in all of the States, including the original 13.").  For all of these reasons, the Court finds that this affirmative defense cannot bar the relief requested in Plaintiff's motion.

With regard to Defendants' Twelfth Affirmative Defense (abandonment), "an individual tribal member has no alienable or inheritable interest in the communal holding," and "no tribal member can claim a federal right against the tribe to any specific part of the tribal property."  1 *Cohen's Handbook of Federal Indian Law* § 15.02 (2019). Defendants agree that members of the Oneida Indian Nation have resided on and possessed the Property since time immemorial.  (Dkt. No. 17, at ¶ 55 [Defs.' Answer].)  Moreover, Defendants now agree the Orchard Party is not a separate faction.  (Dkt. No. 37, at 25 [attaching page "19" of Defs.' Opp'n Mem. of Law].)  Finally, as stated in the preceding paragraph, only a federal statute or treaty can affect tribal land rights.  For all of these reasons, the Court finds that this affirmative defense cannot bar the relief requested in Plaintiff's motion.

With regard to Defendants' Thirteenth Affirmative Defense (of failure to state a claim), the Court finds that Plaintiff's Complaint states a claim upon which relief can be granted for all of the reasons stated in the Court's Decision and Order of November 15, 2018, and in this Decision and Order.  For this reason, the Court finds that this affirmative defense cannot bar the

relief requested in Plaintiff's motion.

Finally, with regard to Plaintiff's Fourteenth Affirmative Defense (acquiescence and estoppel), neither the Complaint nor Answer has (even when viewed in context) plausibly alleged that such acquiescence or estoppel occurred.  Tribal members cannot acquire a proprietary interest in tribal land merely by living on it.  1 *Cohen's Handbook of Federal Indian Law* § 15.02 (2019).  Moreover, as stated earlier, only a federal statute or treaty can affect tribal land rights. For all of these reasons, the Court finds that this affirmative defense cannot bar the relief requested in Plaintiff's motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 32) is **<u>GRANTED</u>**; and it is further

**DECLARED** that neither Defendant Trust nor Defendant Phillips, as an individual or otherwise, does not own, or have any property interest in, the Property; and it is further

**DECLARED** that the trust document, quitclaim deed and all related documents filed by Defendant Phillips in the Oneida County land records are invalid and void to the extent they concern the Property; and it is further

**ORDERED** that Defendants are **PERMANENTLY ENJOINED** from doing the following:

(a) claiming the Property for themselves, any beneficiary of Defendant Trust, or any other person or entity;

(b) asserting that they or any beneficiary of Defendant Trust owns or has a property interest in the Property; and

18

(c) creating or causing to be created, or filing or causing to be filed, in land records any document asserting that they, any beneficiary of Defendant Trust, or any other person or entity owns or has a property interest in the Property.

Dated: July 31, 2019
       Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge

19